1

2

3          UNITED STATES DISTRICT COURT
          WESTERN DISTRICT OF WASHINGTON
4                   AT TACOMA

5

6    GAVIN LEE BUCK,

7                                          Case No. 3:10-cv-05519-KLS
                           Plaintiff,
8              v.                          ORDER REVERSING DEFENDANT'S
                                           DECISION TO DENY BENEFITS AND
9    MICHAEL J. ASTRUE, Commissioner of    REMANDING FOR FURTHER
     Social Security,                      ADMINISTRATIVE PROCEEDINGS
10
                           Defendant.
11

12

13

14

15

16

17          Plaintiff has brought this matter for judicial review of defendant's denial of his

18   applications for disability insurance and supplemental security income ("SSI") benefits.

19   Pursuant to 28 U.S.C. § 636(c), Federal Rule of Civil Procedure 73 and Local Rule MJR 13, the

20   parties have consented to have this matter heard by the undersigned Magistrate Judge. After

21   reviewing the parties' briefs and the remaining record, the Court hereby finds that for the reasons

22   set forth below, defendant's decision to deny benefits should be reversed and this matter should

23   be remanded for further administrative proceedings.

24
                           FACTUAL AND PROCEDURAL HISTORY
25

26          On August 26, 2008, plaintiff filed an application for SSI benefits and on September 17,

     ORDER - 1

2008, he filed another one for disability insurance benefits, alleging disability as of March 1, 2008, due to a bipolar disorder, an attention deficit disorder/attention deficit hyperactivity disorder ("ADD/ADHD"), anxiety, panic attacks, insomnia, and ulcers. See Administrative Record ("AR") 16, 112, 141. His applications were denied upon initial administrative review and on reconsideration. See AR 53, 56, 62, 64. A hearing was held before an administrative law judge ("ALJ") on September 11, 2009, at which plaintiff, represented by counsel, appeared and testified, as did a medical expert. See AR 28-48.

On September 29, 2009, the ALJ issued a decision in which plaintiff was determined to be not disabled. See AR 16-27. Plaintiff's request for review of the ALJ's decision was denied by the Appeals Council on June 23, 2010, making the ALJ's decision defendant's final decision. See AR 1; see also 20 C.F.R. § 404.981, § 416.1481. On July 27, 2010, plaintiff filed a complaint in this Court seeking judicial review of the ALJ's decision. See ECF #1-#3. The administrative record was filed with the Court on October 5, 2010. See ECF #8. The parties have completed their briefing, and thus this matter is now ripe for judicial review and a decision by the Court.

Plaintiff argues defendant's decision should be reversed and remanded for an award of benefits or, in the alternative, for further administrative proceedings, because the ALJ erred: (1) in evaluating the medical evidence in the record; (2) in assessing plaintiff's credibility; (3) in assessing his residual functional capacity; and (4) in finding him to be capable of performing his past relevant work. The Court agrees the ALJ erred in determining plaintiff to be not disabled, but, for the reasons set forth below, finds that while defendant's decision should be reversed, this matter should be remanded for further administrative proceedings. Although plaintiff requests oral argument in this matter, the Court finds such argument to be unnecessary.

ORDER - 2

This Court must uphold defendant's determination that plaintiff is not disabled if the proper legal standards were applied and there is substantial evidence in the record as a whole to support the determination. See Hoffman v. Heckler, 785 F.2d 1423, 1425 (9th Cir. 1986). Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. See Richardson v. Perales, 402 U.S. 389, 401 (1971); Fife v. Heckler, 767 F.2d 1427, 1429 (9th Cir. 1985). It is more than a scintilla but less than a preponderance. See Sorenson v. Weinberger, 514 F.2d 1112, 1119 n.10 (9th Cir. 1975); Carr v. Sullivan, 772 F. Supp. 522, 524-25 (E.D. Wash. 1991). If the evidence admits of more than one rational interpretation, the Court must uphold defendant's decision. See Allen v. Heckler, 749 F.2d 577, 579 (9th Cir. 1984).

I.      The ALJ's Evaluation of the Medical Evidence in the Record

The ALJ is responsible for determining credibility and resolving ambiguities and conflicts in the medical evidence. See Reddick v. Chater, 157 F.3d 715, 722 (9th Cir. 1998). Where the medical evidence in the record is not conclusive, "questions of credibility and resolution of conflicts" are solely the functions of the ALJ. Sample v. Schweiker, 694 F.2d 639, 642 (9th Cir. 1982). In such cases, "the ALJ's conclusion must be upheld." Morgan v. Commissioner of the Social Sec. Admin., 169 F.3d 595, 601 (9th Cir. 1999). Determining whether inconsistencies in the medical evidence "are material (or are in fact inconsistencies at all) and whether certain factors are relevant to discount" the opinions of medical experts "falls within this responsibility." Id. at 603.

In resolving questions of credibility and conflicts in the evidence, an ALJ's findings "must be supported by specific, cogent reasons." Reddick, 157 F.3d at 725. The ALJ can do this

"by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." Id. The ALJ also may draw inferences "logically flowing from the evidence." Sample, 694 F.2d at 642. Further, the Court itself may draw "specific and legitimate inferences from the ALJ's opinion." Magallanes v. Bowen, 881 F.2d 747, 755, (9th Cir. 1989).

The ALJ must provide "clear and convincing" reasons for rejecting the uncontradicted opinion of either a treating or examining physician. Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1996). Even when a treating or examining physician's opinion is contradicted, that opinion "can only be rejected for specific and legitimate reasons that are supported by substantial evidence in the record." Id. at 830-31. However, the ALJ "need not discuss *all* evidence presented" to him or her. Vincent on Behalf of Vincent v. Heckler, 739 F.3d 1393, 1394-95 (9th Cir. 1984) (citation omitted) (emphasis in original). The ALJ must only explain why "significant probative evidence has been rejected." Id.; see also Cotter v. Harris, 642 F.2d 700, 706-07 (3rd Cir. 1981); Garfield v. Schweiker, 732 F.2d 605, 610 (7th Cir. 1984).

In general, more weight is given to a treating physician's opinion than to the opinions of those who do not treat the claimant. See Lester, 81 F.3d at 830. On the other hand, an ALJ need not accept the opinion of a treating physician, "if that opinion is brief, conclusory, and inadequately supported by clinical findings" or "by the record as a whole." Batson v. Commissioner of Social Sec. Admin., 359 F.3d 1190, 1195 (9th Cir. 2004); see also Thomas v. Barnhart, 278 F.3d 947, 957 (9th Cir. 2002); Tonapetyan v. Halter, 242 F.3d 1144, 1149 (9th Cir. 2001). An examining physician's opinion is "entitled to greater weight than the opinion of a nonexamining physician." Lester, 81 F.3d at 830-31. A non-examining physician's opinion may constitute substantial evidence if "it is consistent with other independent evidence in the record."

1   Id. at 830-31; Tonapetyan, 242 F.3d at 1149.

2        A.      Mr. Hockett

3        The record contains a state agency psychological/psychiatric evaluation form completed

4   by Richard Hockett – a mental health practitioner at the mental health clinic from which plaintiff

5   received mental health counseling – in which he opined that plaintiff had a number of marked to

6   severe mental functional limitations. See AR 403-06. In regard to that opinion, the ALJ found in

7   relevant part as follows:

8
9        [In the evaluation . . . he completed in April 2009, Mr.] Hockett . . . reported
         the claimant was actively participating in his treatment and learning
10       interventions to help with his mood symptoms. This evaluation indicated the
         claimant was easily distracted, unable to remember recent information, needed
11       constant reminders, and had a hard time remembering directions and
         following through with tasks due to his attention deficit hyperactivity disorder
12       symptoms. It also stated he had significant issues interacting with others and
         displayed avoidant behavior by avoiding going out in the community. Mr.
13       Hockett reported that his bipolar symptoms affected his ability to work.
         Diagnosis was bipolar I disorder and attention deficit hyperactivity disorder,
14       which Mr. Hockett opined caused marked cognitive limitations, and marked to
         severe social limitations. In June 2009, counseling records indicate the
15       claimant was complaining of continued mood issues and was much more
         irritable. He thought this was from current stressors, including housing issues.
16       He had been getting more sleep. Later that month, he reported ongoing
         improvements in attention deficit hyperactivity disorder symptoms. His sleep
17       was more successful as well. On exam, affect was flat. He was cooperative
         and oriented with good eye contact. He was a vague historian. Insight and
18       judgment were good. His medications were continued. (Exhibits 15F -17F)

19
20       . . .
         . . . [C]arefully considered here was Mr. Hockett's opinion . . . that the
21       claimant has marked cognitive limitations and marked to severe social
         limitations. Noteworthy is that Mr. Hockett is not an acceptable treating
22       source and accompanying counseling records do not support his conclusions,
         as was outlined in [medical expert] Dr. [Arthur] Lewy's testimony. The
23       counseling records show no indication of assessment of attention at all, and no
         strong concern documented in those records, with little by way of objective
24       findings to support such a conclusion. In fact, counseling records document
         partial response to medications for attention deficit hyperactivity disorder.
25
26
    AR 21, 26. Plaintiff argues the reasons the ALJ gave for rejecting Mr. Hockett's opinion are not

    ORDER - 5

valid. While the Court agrees that not all of those reasons are legitimate, overall the ALJ did not err in rejecting that opinion.

First, it is true that the mere fact that Mr. Hockett is not an "acceptable medical source" as that term is defined in the Social Security regulations, is not a valid reason for discounting Mr. Hockett's opinion. See Gomez v. Chater, 74 F.3d 967, 970-71 (9th Cir. 1996); 20 C.F.R. § 404.1513(a), (d), § 416.913(a), (d) (acceptable medical sources include licensed physicians and licensed or certified psychologists). Social Security Regulations expressly provide that evidence from "other sources," including other "medical sources" such as mental health therapists, may be used to "show the severity" of a claimant's impairments and their effect on the claimant's ability to work. 20 C.F.R. § 404.1513(d), § 416.913(d). Further, Social Security Ruling ("SSR") 06-03p states in relevant part that:

> . . . With the growth of managed health care in recent years and the emphasis on containing medical costs, medical sources who are not "acceptable medical sources," such as nurse practitioners, physician assistants, and licensed clinical social workers, have increasingly assumed a greater percentage of the treatment and evaluation functions previously handled primarily by physicians and psychologists. Opinions from these medical sources, who are not technically deemed "acceptable medical sources" under our rules, are important and should be evaluated on key issues such as impairment severity and functional effects, along with the other relevant evidence in the file. . . .

> Although [Social Security regulations] do not address explicitly how to evaluate evidence (including opinions) from "other sources," they do require consideration of such evidence when evaluating an "acceptable medical source's" opinion. For example, [those] regulations include a provision that requires adjudicators to consider any other factors brought to our attention, or of which we are aware, which tend to support or contradict a medical opinion. Information, including opinions, from "other sources"-both medical sources and "non-medical sources"-can be important in this regard. . . .

> . . .

> The fact that a medical opinion is from an "acceptable medical source" is a factor that may justify giving that opinion greater weight than an opinion from a medical source who is not an "acceptable medical source" because . . .

"acceptable medical sources" "are the most qualified health care professionals." However, depending on the particular facts in a case, and after applying the factors for weighing opinion evidence, an opinion from a medical source who is not an "acceptable medical source" may outweigh the opinion of an "acceptable medical source," including the medical opinion of a treating source. For example, it may be appropriate to give more weight to the opinion of a medical source who is not an "acceptable medical source" if he or she has seen the individual more often than the treating source and has provided better supporting evidence and a better explanation for his or her opinion. . . .

SSR 06-03p, 2006 WL 2329939 *3-*5.

On the other hand, the ALJ properly noted plaintiff's mental health counseling records did "not support" Mr. Hockett's conclusions, "as was outlined in Dr. Lewy's testimony." AR 26; see also AR 271-74, 276, 278, 280-81, 283-85, 289-96, 335, 337, 344-45, 355, 358, 373-75, 379-80, 399-400. Such lack of supporting objective clinical findings constitutes a valid basis for rejecting the opinion of even a treating physician, let alone that of a mental health practitioner such as Mr. Hockett. See Batson, 359 F.3d at 1195 (ALJ need not accept opinion of treating physician, if that opinion is inadequately supported by clinical findings); see also Thomas, 278 F.3d at 957; Tonapetyan, 242 F.3d at 1149. Accordingly, the ALJ also did not err in relying on Dr. Lewy's testimony in making this finding as well. In addition, the fact that some of the other medical opinion evidence in the record may be consistent with that from Mr. Lewy, does not take away from the validity of the ALJ's findings here, given that the lack of clinical support for that opinion alone was a sufficient basis for rejecting it.

Plaintiff argues the ALJ further erred here by choosing the testimony of Dr. Lewy over that of Mr. Hockett, as well as "all the other medical sources" in the record. ECF #16, p. 23. In particular, plaintiff points to the ALJ's statement in his decision that there is "an issue when the treating source is providing supporting statements in a secondary gain context." AR 22. Such a statement, plaintiff asserts, implies the ALJ either did not believe medical providers who provide

ORDER - 7

statements supporting a claimant's disability claims are not acting professionally or felt plaintiff was acting out of some sort of secondary gain motivation. But in making the above statement, the ALJ was merely paraphrasing Dr. Lewy's testimony (see AR 45), and there is no indication that he actually adopted it.

B.  Dr. Kenderdine

In regard to the acceptable medical opinion source evidence in the record, the ALJ found in relevant part as follows:

> In May 2008, a psychological evaluation for public assistance benefits was performed by Shawn Kenderdine, Ph.D., who noted the claimant's reports of a diagnosis of attention deficit hyperactivity disorder. He reported special education throughout his school years for behavioral problems. He was raised in multiple foster homes and attended multiple schools. His biological parents had chemical dependency and mental health issues. He began having legal difficulties at the age of 17 with 11 arrests during adulthood. He had been released from prison on October 10, 2007 and was currently on probation. A history of substance abuse was noted, which Dr. Kenderdine reported would contribute to mood disorders and antisocial behavior.
>
> On mental status evaluation, he was cooperative, spoke rapidly and responded quickly to questions. He was quite restless with difficulty remaining still. Mood was depressed. Thought processes appeared intact, logical, and goal directed. He was unable to spell world backwards. Delayed recall was poor; however, immediate memory was within normal limits. He was able to complete a complex task. He responded quickly and impulsively, which Dr. Kenderdine felt impaired his judgment and in combination with memory and attention deficits was likely to impair learning to some degree. Intelligence was estimated to be average. Dr. Kenderdine noted a limited work history with reported attendance problems and poor attention interfering with his ability to sustain or maintain work, although he had been able to work for one year for Pioneer Human Services. Diagnosis were listed as attention deficit hyperactivity disorder, childhood onset, combined type, methamphetamine dependence in sustained remission, major depressive disorder, severe without psychotic features, antisocial personality disorder, and global assessment of functioning of 48. Dr. Kenderdine opined he had moderate to marked limitations in cognitive and social factors, as the severity of his cognitive difficulties, depressed mood, chemical dependency, and legal history all interfered with his ability to tolerate normal stressors. (Exhibit 7F)

. . .

. . . Dr. Kenderdine opined the claimant had moderate to marked limitations in cognitive and social factors at Exhibit 7F, which was attributed to the severity of his cognitive difficulties, depressed mood, chemical dependency, legal history, and limited work history with reported attendance problems and poor attention interfering with his ability to sustain or maintain work. However, no weight is given to Dr. Kenderdine's opinion, as the record is clear that the claimant's problems with attendance and ability to sustain working are attributable to his significant substance abuse history, with reported daily use of methamphetamines for a sustained period of time. He has shown an ability to sustain work activity for a year or more at a time, as outlined above, and his intelligence has been noted to be normal, although he might have some attentional difficulties related to his attention deficit hyperactivity disorder, which is improving with treatment, as outlined in the counseling records.

AR 19, 25-26. Plaintiff again challenges the ALJ's above stated reasons for rejecting the opinion of Dr. Kenderdine.

The Court agrees that there is no basis in the record for the ALJ's statement that it "is clear that" plaintiff's problems with attendance and ability to sustain work were "attributable to his significant substance abuse history" (AR 25), as the record largely shows plaintiff was in sustained remission at the time of Dr. Kenderdine's evaluation report, and no opinion source in the record has attributed his mental health problems to that history (see AR 255-56, 258, 305-07, 316, 318, 324-25). In addition, the fact that plaintiff may have "shown an ability to sustain work activity for a year or more at a time" in the past (AR 25), is not a relevant basis for discounting Dr. Kenderdine's opinion, given that it appears the last time plaintiff sustained such activity was prior to his alleged date of disability (see AR 19, 142).

That plaintiff's "intelligence has been noted to be normal" (AR 25-26), furthermore, is not a valid basis for discounting Dr. Kenderdine's opinion, given that Dr. Kenderdine seems to have based the diagnoses and limitations she assessed on factors other than the intelligence level plaintiff exhibited. See AR 253-66. Lastly, although it may be that mental health counseling records have shown some improvement in attentional difficulties related to his attention deficit

ORDER - 9

hyperactivity disorder, again Dr. Kenderdine did not just base her opinion on that diagnosis. See id. In addition, improvement in plaintiff's problems with attention would not account for many of the mental functional limitations Dr. Kenderdine found, particularly the marked restrictions in social functioning and in exercising judgment. See AR 256. Accordingly, the Court agrees with plaintiff that the ALJ erred in rejecting Dr. Kenderdine's opinion.

### C.   Dr. Schechter

Plaintiff next takes issue with the ALJ's evaluation of the opinion evidence from Allison Schechter, Psy.D., which reads in relevant part:

> A consultative psychological examination was performed in November 2008 by [Dr.] Schechter . . . The claimant reported he had been unable to hold a job for more than six months because he would often call in because he was too exhausted due to his difficulty sleeping. He reported difficulty staying on task as well. He stated he would sometimes clean excessively just to keep busy. He described manic phases, mood swings, and difficulty concentrating. He reported every two days he would have an episode where he screamed and yelled and broke things. These episodes would last 1-2 days. He had been on medications since August. He reported being in special education from the 6th through the 8th grades because of difficulty staying on task. He dropped out of school in the 9th grade and later received his GED. He attempted to go to college but was unable to concentrate. He reported his mother was a drug addict and he spent time between his aunt, grandma, and a family friend, as well as in a foster home for six months. He lived alone in a rented room. He had four children with three different mothers and had never been married. He had no contact with the oldest children but saw his youngest frequently. He had been arrested three times as a child and 8-9 times as an adult for such things as taking a motor vehicle without permission, theft, possession, and forgery. He had been to prison three times for one year duration each time. He stated his father introduced him to methamphetamines at age 17, which he found made him calm. He used pretty much continuously until 1999 when he went to prison. He was clean until 2004, used for six months, and then went to prison again. He had been clean since 2005. He used marijuana once in a while, tried acid once, and denied ever abusing alcohol. He was in treatment twice, once in 2001-2002, and once in 2006. On exam, he was cooperative and oriented. His leg was continuously shaking. Concentration was considered fair. He was willing to attempt tasks without irritability. Pace was considered somewhat slow, but he spoke relatively quickly. Stream of thought was logical and goal directed. Mood was unremarkable. He was able to complete serial 3s and serial 7s without difficulty. He was able to spell

world backward.

Diagnosis was attention deficit hyperactivity disorder, combined type, childhood onset, bipolar disorder, not otherwise specified, adult antisocial behavior, methamphetamine dependence in remission per history, marijuana dependence in remission per history, and global assessment of functioning of 60. Dr. Schechter opined he might have difficulty performing both simple and repetitive tasks as well as detailed and complex tasks, particularly because of his attention deficit hyperactivity disorder symptoms. He would be able to accept instructions from supervisors and interact with coworkers and the public; however, he seemed to become easily irritated and act out inappropriately, such as yelling and hitting things. He recently started on medication after self-medicating essentially his entire life with street drugs, and until his mental health issues were more stabilized, it was likely his Axis I disorders might interfere with both his ability to perform work activities on a consistent basis as well as maintain regular attendance in the workplace. He might not currently be capable of managing unusual stress in the competitive workplace. (Exhibit 9F)

. . .

Dr. Schechter opined at Exhibit 9F that the claimant had significant work-related limitations, including difficulty performing both simple and repetitive tasks as well as detailed and complex tasks, particularly because of his attention deficit hyperactivity disorder symptoms. In an opposite opinion, Dr. Lewy testified the claimant was capable of simple repetitive work and perhaps more complex tasks as well. When asked about this difference in opinion, Dr. Lewy persuasively testified that looking at the objective findings in Dr. Schechter's evaluation indicated some reduction in ability to sustain simple work, but not extreme. The claimant seemed able to persist throughout the evaluation, which does not support a conclusion that he could not perform basic or more complex tasks on a consistent basis. Review of Dr. Schechter's report indicates the claimant reported to her episodes of screaming, yelling, and breaking things, lasting 1-2 days every 2 days. However, these episodes, which would represent significant signs of dysfunction, were not reported elsewhere in the record, nor observed elsewhere. After carefully reviewing the longitudinal record presented here, the undersigned finds more consistency in Dr. Lewy's testimony and gives it more weight over the opinion of Dr. Schechter, particularly in light of the inconsistencies between her examination and her conclusions.

AR 20-21, 26. The Court disagrees the ALJ erred in rejecting Dr. Schechter's opinion here.

As discussed above, an ALJ may discount the opinion of even a treating physician if it is

not adequately supported by clinical findings. See Batson, 359 F.3d at 1195; Thomas, 278 F.3d

ORDER - 11

at 957; <u>Tonapetyan</u>, 242 F.3d at 1149.  As noted by both the ALJ and Dr. Lewy, the objective findings provided by Dr. Schechter – including a relatively benign mental status examination – do not support her opinion that plaintiff would have difficulty performing simple and repetitive tasks.[1]  <u>See</u> AR 305-07.  Also as noted by the ALJ, while plaintiff reported episodes of acting out and breaking things – on which Dr. Schechter based her opinion in part (<u>see</u> AR 303-04, 307) – he did not report them anywhere else in the record.  <u>See</u> <u>Batson</u>, 359 F.3d at 1195 (ALJ need not accept treating physician opinion, if that opinion is inadequately supported by record as whole); <u>Thomas</u>, 278 F.3d at 957; <u>Tonapetyan</u>, 242 F.3d at 1149.

D.     <u>Dr. Fisher and Dr. Gentile</u>

The record also contains a state agency mental residual functional capacity assessment ("MRFCA") form completed by Alex Fisher, Ph.D., and affirmed by Mary A. Gentile, Ph.D., both non-examining, consultative psychologists, in which boxes in the form's "**SUMMARY CONCULSIONS**" section were checked, indicating plaintiff was moderately limited in several mental functional areas.  <u>See</u> AR 322-23 (emphasis in original); <u>see</u> <u>also</u> AR 346.  Set forth in the "FUNCTIONAL CAPACITY ASSESSMENT" section of the MRFCS form were the following further narrative conclusions:

> . . . [Plaintiff] can understand and remember simple instructions.
>
> . . . He is not so depressed or anxious that he would be unable to carry out routine tasks in a reliable manner.

---

[1] Plaintiff argues the fact that he "seemed able to persist throughout the evaluation" as noted by the ALJ (AR 26), which Dr. Lewy testified was "probably an hour or so" in length (AR 42), does not mean he could persist in a work setting on a full-time basis, as there is no correlation between the two situations.  But the ability to persist through the length of the evaluation Dr. Schechter performed exhibited by plaintiff, does indicate a capability for persisting over a significant continuous period of time.  As such, the Court cannot say it was unreasonable for the ALJ to base his rejection of Dr. Schechter's opinion at least in part on this basis, particularly when viewed in combination with the other fairly unremarkable clinical findings noted above.  <u>See</u> <u>Allen</u>, 749 F.2d at 579 (if evidence admits of more than one rational interpretation, ALJ's decision must be upheld).

. . . He should be able to tolerate incidental contact with others while at work.

. . . He would likely have problems coping with the stress involved in frequent change [sic] adaptation demands.

AR 325. In regard to the findings of Drs. Fisher and Gentile, the ALJ stated that: "[t]he opinions of the[se] non-examining State Agency consultants . . . tend[ed] to support [his own] conclusions [concerning plaintiff's functioning]; however, additional evidence was received subsequent to their opinions, including testimony at the hearing, making a new determination necessary in this case." AR 26.

The Court disagrees with plaintiff that the ALJ failed to provide specific reasons here for not adopting all of the mental functional limitations Dr. Fisher and Dr. Gentile assessed. Indeed, the ALJ appears to have given full credit to their narrative conclusions, by including them in his assessment of plaintiff's mental functional capability. See AR 23. While it appears that the ALJ did not specifically adopt all of the moderate limitations checked off in the form's SUMMARY CONCLUSIONS section, he was required to consider only the narrative conclusions set forth in the FUNCTIONAL CAPACITY ASSESSMENT section thereof in assessing plaintiff's ability to function. See Program Operations Systems Manual ("POMS") DI 25020.010(B)(1).[2] Thus, here

---

[2] The POMS provides in relevant part as follows:

**NOTE**: The purpose of section I ("Summary Conclusion") on the [MRFCA form] is chiefly to have a worksheet to ensure that the psychiatrist or psychologist has considered each of these pertinent mental activities and the claimant's . . . degree of limitation for sustaining these activities over a normal workday and workweek on an ongoing, appropriate, and independent basis. **It is the narrative** written by the psychiatrist or psychologist **in section III** ("Functional Capacity Assessment") of [the MRFCA form] **that adjudicators are to use as the assessment of RFC**. Adjudicators must take the RFC assessment **in section III** and decide what significance the elements discussed in this RFC assessment have in terms of the person's ability to meet the mental demands of past work or other work. This must be done carefully using the adjudicator's informed professional judgment.

POMS DI 25020.010(B)(1) (emphasis in original). The Ninth Circuit, furthermore, has recognized the POMS as being "persuasive authority," even though it "does not have the force of law." Warre v. Commissioner of Social Sec. Admin., 439 F.3d 1001, 1005 (9th Cir. 2006).

ORDER - 13

too the Court finds the ALJ did not err in his evaluation of the medical evidence.

E.  Dr. Lewy

Plaintiff further takes issue with the way the ALJ employed the testimony of Dr. Lewy. First, plaintiff asserts that instead of considering the evidence from Drs. Kenderdine, Schechter, Fisher and Gentile, the ALJ accepted only that from Dr. Lewy. But, as discussed above, there is nothing wrong with the manner in which the ALJ relied on Dr. Lewy's testimony in rejecting the opinion of Dr. Schechter, or for that matter in rejecting that of Mr. Hockett. Also as discussed above, the ALJ did not err in evaluating the findings of Drs. Fisher and Gentile. Further, while the ALJ did err in rejecting Dr. Kenderdine's opinion as explained above, he did not rely on the testimony of Dr. Lewy in order to do so. Thus, the Court finds no basis in plaintiff's arguments regarding that testimony for overturning the ALJ's evaluation of the above medical evidence in the record, although for the reasons discussed herein, reversal of the ALJ's decision and remand for further administrative proceedings is warranted.[3]

---

[3] Plaintiff further argues as follows:

The ALJ also pointed to the testimony of Dr. Lewy that he did not believe that the record supported the fact that the claimant was easily distracted, unable to remember recent information, needed constant reminders, and had a hard time remembering directions and following through on tasks (AR 22). However, this reflects a failure by Dr. Lewy to read the records. For example:

- August 8, 2008. Claimant has not completed the physical examination (AR 297);

- July 18, 2008. No show for appointment (AR 282);

- August 13, 2008. Called to remind client for appointment (AR 279);

- October 3, 2008. Clinician called to remind client of upcoming appointment (AR 342);

- October 10, 2008. Client was a no show today (AR 341);

- October 15, 2008 & October 17, 2008, the client had to be called to be reminded of appointment (AR 339-340);

- October 31, 2008. Client called to schedule appointment for November 4, 2008 (AR 337);

- November 5, 2008. Claimant did not show up for his appointment and called the next day to reschedule (AR 336);

- January 2, 2009. Cli[nician] called to remind him of upcoming appointment on January 7, 2009 (AR 331);

ORDER - 14

II.     The ALJ's Assessment of Plaintiff's Credibility

Questions of credibility are solely within the control of the ALJ. See Sample v. Schweiker, 694 F.2d 639, 642 (9th Cir. 1982). The Court should not "second-guess" this credibility determination. Allen, 749 F.2d at 580. In addition, the Court may not reverse a credibility determination where that determination is based on contradictory or ambiguous evidence. See id. at 579. That some of the reasons for discrediting a claimant's testimony should properly be discounted does not render the ALJ's determination invalid, as long as that determination is supported by substantial evidence. Tonapetyan v. Halter, 242 F.3d 1144, 1148 (9th Cir. 2001).

To reject a claimant's subjective complaints, the ALJ must provide "specific, cogent

---

- April 6, 2009. Client was no show today (AR 378);

- April 14, 2009. Client called to set up an appointment (AR 377). Rescheduled appointment (AR 376).

These records indicate a pattern that the claimant has difficulty following through with appointments and attending treatment sessions. . . .

ECF #16, pp. 24-25. But nothing in the record indicates that plaintiff's failure to follow through with appointments and attend treatment sessions were due to his mental health impairments, as opposed to, say, a lack of willingness to be compliant with recommended treatment. See Fair v. Bowen, 885 F.2d 597, 603 (9th Cir. 1989) (failure to assert good reason for not seeking, or following a prescribed course of, treatment, can cast doubt on sincerity of claimant's pain testimony); see also Burch v. Barnhart, 400 F.3d 676, 681 (9th Cir. 2005) (upholding ALJ in discounting claimant's credibility in part due to lack of consistent treatment, and noting that fact that claimant's pain was not sufficiently severe to motivate her to seek treatment, even if she had sought some treatment, was powerful evidence regarding extent to which she was in pain). Accordingly, the Court declines to find the ALJ erred in evaluating the medical evidence in the record on this basis.

Nor does the Court find persuasive plaintiff's argument that in pointing out that Dr. Lewy had "testified that looking at the objective findings in [Dr. Schechter's] evaluation indicated some reduction in [the] ability [to perform simple, repetitive tasks], but not extreme in any way" (AR 22), the ALJ undercuts his finding that plaintiff could understand and remember simple instructions (see AR 23). This is because, plaintiff goes on to argue, an "extreme effects" test is not required by the Social Security regulations. ECF #16, p. 26. The point here, though, is that, again as discussed above, nothing in Dr. Schechter's clinical findings supported the limitation she noted in plaintiff's ability to perform simple and repetitive tasks. Lastly, the Court gives no credence to plaintiff's assertion that the ALJ erred by finding him to be capable of understanding and remembering simple instructions, without addressing the issue of whether he could perform such instructions. First, one does not perform instructions. Second, the ALJ went on to find he could "**carry out routine tasks in a reliable manner**" (AR 23 (emphasis in original), and – again, given the fairly normal clinical findings provided – no objective evidence in Dr. Schechter's evaluation report supports a determination that plaintiff cannot do such routine (or simple) tasks repetitively.

ORDER - 15

reasons for the disbelief." <u>Lester</u>, 81 F.3d at 834 (citation omitted). The ALJ "must identify what testimony is not credible and what evidence undermines the claimant's complaints." <u>Id.</u>; <u>see</u> <u>also</u> <u>Dodrill v. Shalala</u>, 12 F.3d 915, 918 (9th Cir. 1993). Unless affirmative evidence shows the claimant is malingering, the ALJ's reasons for rejecting the claimant's testimony must be "clear and convincing." <u>Lester</u>, 81 F.2d at 834. The evidence as a whole must support a finding of malingering. <u>See</u> <u>O'Donnell v. Barnhart</u>, 318 F.3d 811, 818 (8th Cir. 2003).

In determining a claimant's credibility, the ALJ may consider "ordinary techniques of credibility evaluation," such as reputation for lying, prior inconsistent statements concerning symptoms, and other testimony that "appears less than candid." <u>Smolen v. Chater</u>, 80 F.3d 1273, 1284 (9th Cir. 1996). The ALJ also may consider a claimant's work record and observations of physicians and other third parties regarding the nature, onset, duration, and frequency of symptoms. <u>See</u> <u>id.</u>

In this case, the ALJ provided the following credibility determination:

After careful consideration of the evidence, the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to cause some symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of his symptoms are not credible to the extent they are inconsistent with the above residual functional capacity assessment.

The claimant testified and stated elsewhere in the record that he has been able to work no more than 6 months at a time. However, in a statement to Dr. Kenderdine at Exhibit 7F, he stated he worked for one year at Pioneer Industries. Accompanying records . . . indicate he stated he worked from October 2006 to March 2008 at Pioneer Industries (1E, 3E, 4E) and from September 2001 to November 2002 in assembly (also at Pioneer Industries) (3E, 4E), both jobs on a full time basis.

Although it is generally accepted that his drug abuse is in remission, there was a positive urinalysis at [sic] in August 2008 at 8F/33 for cannabinoids, which the claimant testified was from exposure to marijuana, and not actual use, which seems highly unlikely.

ORDER - 16

In addition, although the claimant is trying to positively turn his life around, he does have an extensive legal history resulting in lengthy incarcerations, which tends to bring his credibility under question. He told Dr. Kenderdine he was raised in multiple foster homes, but he told Dr. Schechter at 9F that he was in a foster home for six months. He told Dr. Schechter he was in special education for difficulty staying on task, but in two other interviews, he reported he was in special education for behavioral issues. On an exam at 7F, he was unable to spell world backwards, but in an exam at 9F, he was able to do so. [The c]laimant's varying reports do not enhance his credibility.

AR 25. The Court finds these reasons are a valid basis on which the ALJ could find plaintiff not fully credible, given that as noted above in assessing credibility, an ALJ may consider "ordinary techniques of credibility evaluation," such as prior inconsistent statements concerning symptoms and other testimony that "appears less than candid." See Smolen, 80 F.3d at 1284.

Plaintiff argues the ALJ does not specifically state what he statements he finds to be not fully credible, but as can be seen, the ALJ did so here. For example, the ALJ noted plaintiff was inconsistent in regard to his testimony and self-reports concerning his past work history, his drug use and the reasons as to why he was placed in special education. Plaintiff also argues the ALJ relied on evidence here that has nothing to do with his credibility, in that it says nothing about his statements concerning his condition. However, once more as noted above, the ALJ may consider "ordinary techniques of credibility evaluation," such as reputation for lying and other testimony that "appears less than candid." Id. Accordingly, inconsistencies in a claimant's testimony and self-reports overall may be considered in determining credibility, not just those that relate solely to specific claimed impairments or limitations.

Plaintiff further argues there is no factual or scientific basis for the ALJ's statement that it seemed "highly unlikely" his positive urinalysis "was from exposure to marijuana, and not actual use." AR 25. But the only evidence in the record to support a finding that the positive urinalysis was due to exposure thereto, as opposed to actual use thereof, is plaintiff's own testimony to the

contrary, and, as discussed herein, the ALJ noted other inconsistencies in plaintiff's testimony and self-reports that support his adverse credibility determination. Accordingly, the Court finds the ALJ was not remiss in determining plaintiff's testimony here to be "highly unlikely." See Allen, 749 F.2d at 579 (court may not reverse credibility determination where that determination is based on contradictory or ambiguous evidence).

Plaintiff challenges as well the ALJ's reliance on his past history of incarceration to find him not credible, asserting it appears the mere fact that he has been incarcerated in the past was enough for his credibility to be called into question, which he argues was improper. The Court agrees the mere fact that a claimant has been incarcerated or has a criminal history alone is not a sufficient basis upon which to base an adverse credibility determination, given that such reveals nothing about the claimant's honesty or lack thereof. On the other hand, while the Court agrees it is unclear exactly how long plaintiff spent incarcerated, the record does clearly show a history of being arrested for theft, taking a motor vehicle without permission and forgery – all crimes of dishonesty – which certainly have a strong bearing on credibility. See AR 304; see also Duda v. Astrue, 2009 WL 2473671 *22 (W.D. Wash. 2009) (upholding adverse credibility determination in part on basis of claimant's history of crimes of dishonesty including theft).

Finally, plaintiff argues the variations in the statements he made concerning the reasons he was placed in special education, could "simply be a reflection of variability in the ability to function from day to day, something that would be expected from someone who is bipolar and who has ADHD." ECF #16, p. 28. But this is mere speculation on plaintiff's part, and there is no indication in the record that actually is the case. The ALJ's own interpretation of this evidence, furthermore, is just as plausible, or even more so. See Allen, 749 F.2d at 579 (if evidence admits of more than one rational interpretation, ALJ's decision must be upheld). In addition, even if the

evidence in the record is ambiguous in this regard, the ALJ's credibility determination may not be reversed on that basis. See Allen, 749 F.2d at 579.

III.     The ALJ's Assessment of Plaintiff's Residual Functional Capacity

Defendant employs a five-step "sequential evaluation process" to determine whether a claimant is disabled. See 20 C.F.R. § 404.1520; 20 C.F.R. § 416.920.  If the claimant is found to be disabled or not disabled at any particular step thereof, the disability determination is made at that step, and the sequential evaluation process ends. See id.  If a disability determination "cannot be made on the basis of medical factors alone at step three of the evaluation process," the ALJ must identify the claimant's "functional limitations and restrictions" and assess his or her "remaining capacities for work-related activities." Social Security Ruling ("SSR") 96-8p, 1996 WL 374184 *2.

A claimant's residual functional capacity ("RFC") assessment is used at step four of this process to determine whether he or she can do his or her past relevant work, and at step five to determine whether he or she can do other work. See id.  It thus is what the claimant "can still do despite his or her limitations." Id.  A claimant's residual functional capacity is the maximum amount of work he or she is able to perform based on all of the relevant evidence in the record. See id.  However, an inability to work must result from the claimant's "physical or mental impairment(s)." Id.  The ALJ, therefore, must consider only those limitations and restrictions "attributable to medically determinable impairments." Id.  The ALJ also must discuss why the claimant's "symptom-related functional limitations and restrictions can or cannot reasonably be accepted as consistent with the medical or other evidence." Id. at *7.

Here, the ALJ found plaintiff had the residual functional capacity to:

**. . . [P]erform a full range of work at all exertional levels.  He is capable of understanding and remembering simple instructions.  He is able to carry**

ORDER - 19

**out routine tasks in a reliable manner. He should be able to tolerate incidental contact with others while at work. He would likely have problems coping with the stress involved in frequent changes.**

Tr. 23 (emphasis in original). Plaintiff argues the ALJ erred in so finding, asserting the objective medical evidence in the record does not support the limitations contained the above assessment. The Court agrees that because the ALJ erred in evaluating the opinion of Dr. Kenderdine, it is not entirely clear the ALJ's residual functional capacity assessment accurately describes all of plaintiff's mental limitations. Thus, remand for further consideration of those limitations on that basis is appropriate.

IV.    The ALJ's Step Four Determination

At step four of the sequential disability evaluation process, the ALJ found plaintiff to be capable of performing his past relevant work as an assembler, "as he described this work." See AR 26. Plaintiff has the burden at step four to show he is unable to return to his past relevant work. Tackett v. Apfel, 180 F.3d 1094, 1098-99 (9th Cir. 1999). He argues there is no evidence in the record of what he actually did in his work as an assembler, e.g., the type of assembly work performed or specific job duties involved. The Court agrees the one document in the record that deals with plaintiff's past work as an assembler fails to provide such information. See AR 149-50. In addition, in making a determination as to whether plaintiff can return to her past relevant work as actually performed, the ALJ must determine whether plaintiff "retains the [residual functional] capacity to perform *the particular functional demands and job duties* peculiar to [the] individual job as he . . . actually performed it." Id. (emphasis added).

Accordingly, the Court finds the ALJ erred in not obtaining such vocational information before making his determination here. In addition, the Court agrees with plaintiff that in light of the ALJ's errors in evaluating Dr. Kenderdine's opinion, and therefore in assessing his RFC, it is

ORDER - 20

unclear whether plaintiff's mental functional impairments and limitations would allow him to return to his past relevant work as an assembler. Remand for further consideration of this and the other issues discussed above thus is warranted.

V.     <u>This Matter Should Be Remanded for Further Administrative Proceedings</u>

The Court may remand this case "either for additional evidence and findings or to award benefits." <u>Smolen</u>, 80 F.3d at 1292. Generally, when the Court reverses an ALJ's decision, "the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation." <u>Benecke v. Barnhart</u>, 379 F.3d 587, 595 (9th Cir. 2004) (citations omitted). Thus, it is "the unusual case in which it is clear from the record that the claimant is unable to perform gainful employment in the national economy," that "remand for an immediate award of benefits is appropriate." <u>Id.</u>

Benefits may be awarded where "the record has been fully developed" and "further administrative proceedings would serve no useful purpose." <u>Smolen</u>, 80 F.3d at 1292; <u>Holohan v. Massanari</u>, 246 F.3d 1195, 1210 (9th Cir. 2001). Specifically, benefits should be awarded where:

> (1) the ALJ has failed to provide legally sufficient reasons for rejecting [the claimant's] evidence, (2) there are no outstanding issues that must be resolved before a determination of disability can be made, and (3) it is clear from the record that the ALJ would be required to find the claimant disabled were such evidence credited.

<u>Smolen</u>, 80 F.3d 1273 at 1292; <u>McCartey v. Massanari</u>, 298 F.3d 1072, 1076-77 (9th Cir. 2002). Because issues still remain in regard to the medical evidence in the record from Dr. Kenderdine, plaintiff's residual functional capacity and his ability to perform his past relevant work, remand for further administrative proceedings is appropriate. In addition, if on remand it is determined that plaintiff is not capable of returning to his past relevant work, defendant shall proceed on to

step five of the sequential disability evaluation process to determine if he can perform other jobs existing in significant numbers in the national economy.

CONCLUSION

Based on the foregoing discussion, the Court hereby finds the ALJ improperly concluded plaintiff was not disabled. Accordingly, the Court also hereby reverses defendant's decision to deny benefits and remands this matter for further administrative proceedings in accordance with the findings contained herein.

DATED this 28th day of June, 2011.


_Karen L. Strombom_
Karen L. Strombom
United States Magistrate Judge